IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 16-05031-01-CR-SW-MDH |
| ) | |
| LORENZO HERNANDEZ ) | |
| ) | |
| Defendant. ) | |

## **REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b), the above-styled criminal action was referred to the undersigned for preliminary review. Defendant Hernandez filed a Motion to Suppress all statements and evidence obtained pursuant to the warrantless search and seizure of Defendant by Barton County Sheriff's Deputy Justin Ehrsam ("Deputy Ehrsam") on April 9, 2016. (Doc. 20.) The undersigned held a suppression hearing on June 6, 2017. (*See* Docs. 31-33.) Defendant was present with his attorney, Ian Lewis, and the Government appeared by Assistant United States Attorney James Kelleher. (Doc. 33.) During the hearing, the Court heard evidence from Justin Ehrsam, a Deputy Sheriff with the Barton County Sheriff's Department. For the reasons set forth below, it is **RECOMMENDED** that Defendant's Motion to Suppress (Doc. 20), be **GRANTED**.

I. **Findings of Fact[1]**

On April 9, 2016, Deputy Ehrsam observed Defendant walking south on Cherry Street just across from the Sheriff's Office in Lamar, Missouri. Deputy Ehrsam made contact with

---

[1] The facts set forth herein are taken from the testimony adduced at the hearing on the instant Motion and the exhibits admitted during the hearing. The hearing transcript appears as Doc. 33 and the Government's Exhibit Index appears as Doc. 32. Defendant did not introduce any exhibits.

Defendant and asked for his name.[2] Defendant seemed hesitant to divulge his name, but replied that his name was "Frank" and continued walking south on Cherry Street.

Deputy Ehrsam allowed Defendant to continue walking while he pulled his car behind the Barton County Sheriff's Office and called Lamar Police Department ("LPD") Officer Ron Toler. Deputy Ehrsam was aware that the LPD had been looking for a black or Hispanic male in his early twenties in connection with an assault or armed robbery that had occurred prior to April 9, 2016, but wanted to confirm that LPD was still working the case. Deputy Ehrsam believed the robbery had occurred the week prior; however, on cross-examination, Deputy Ehrsam acknowledged that the incident could have taken place 20 days prior. Deputy Ehrsam suspected that "Frank" could be the individual LPD was looking for because there are not a lot of younger black or Hispanic males in Lamar. Once Officer Toler confirmed that LPD was still looking for that individual, and that his full name was Lorenzo Hernandez, Deputy Ehrsam left the lot behind the Sheriff's office to make contact with Defendant once more.[3]

Deputy Ehrsam found Defendant six blocks away from the original point of contact, near the intersection of 16th Street and Cherry Street. During this second encounter, Deputy Ehrsam left his vehicle to speak with Defendant. Prior to speaking to Defendant, Deputy Ehrsam noticed that Defendant had a knife in his pocket. The knife itself was not illegal, but Deputy Ehrsam removed the knife for officer safety. Defendant was again asked his name and again replied "Frank." Deputy Ehrsam asked Defendant if his last name was Hernandez and instructed Defendant to not lie to him. At that point, Defendant replied that it was. Deputy Ehrsam then

---

[2] While the record is unclear, the Court has assumed, based on evidence presented at the hearing, that the initial contact occurred while Deputy Ehrsam was in his vehicle and Defendant was walking south on Cherry Street.
[3] The record is void of any indication as to why LPD was looking for Defendant or what Deputy Ehrsam's purpose was in contacting Defendant.

2

asked if Defendant's full name was really Lorenzo Hernandez. Defendant confirmed that his real name was Lorenzo Hernandez and provided Deputy Ehrsam with his social security number.

Deputy Ehrsam then ran Defendant's information with his dispatcher who confirmed Defendant had two active warrants out of Oklahoma; one out of Comanche County that was fully extraditable and one out of Adair County that was extraditable only within 250 miles. This information was relayed to Deputy Ehrsam at approximately 5:30 PM on April 9, 2016. (Gov't Ex. 2.) Deputy Ehrsam then arrested Defendant due to his outstanding warrants.

Deputy Ehrsam frisked Defendant for weapons again[4] and advised Defendant that he would be searching Defendant's bag for weapons or other contraband prior to Defendant's entry into the Barton County Jail. At that time, Defendant claimed the bag was not his, but Deputy Ehrsam advised Defendant that if he was in possession of the bag it was considered his bag. When searching the bag at the scene, Deputy Ehrsam found a white glass pipe containing some sort of residue. Additionally, when Deputy Ehrsam searched the bag a second time at the Barton County Sheriff's Office, he located a .25 caliber firearm in a pair of blue jeans with one round in the chamber and five rounds in the magazine. The Comanche County Sheriff's Office was notified that Defendant had been detained at approximately 5:45 PM on April 9, 2016. (Gov't Ex. 2.)

## II. Conclusions of Law

Defendant contends that Deputy Ehrsam violated his Fourth Amendment rights by stopping and seizing him during the second encounter because the stop was not based on an objectively reasonable suspicion that Defendant was engaged in criminal activity. Additionally, Defendant contends that Deputy Ehrsam violated his Fourth Amendment rights by searching his backpack

---

[4] Although the testimony in the record does not indicate when Deputy Ehrsam first frisked Defendant, he does testify that he frisked Defendant "again" during Defendant's arrest on the outstanding warrants.

without a search warrant because both Defendant's arrest and subsequent search were the fruits of the unlawful stop. As a result, Defendant argues that any and all evidence and statements obtained as a result of his stop and seizure must be suppressed. Additionally, Defendant argues that any and all evidence and statements obtained as a result of his arrest, and the subsequent search of his backpack, should be suppressed as fruits of the poisonous tree. The Government responds that the stop was lawful because Deputy Ehrsam rightly believed Defendant was wanted by the LPD in connection with an armed robbery. Moreover, the Government argues that, even assuming *arguendo* that the initial stop of Defendant was unconstitutional; the discovery of several active warrants for Defendant broke the causal chain between the stop and the discovery of the firearm, sufficiently purging the evidence of any taint imparted by the unlawful stop. The Court takes up the parties' arguments below.

### A. Deputy Ehrsam's violated Defendant's Fourth Amendment rights by seizing Defendant without an objectively reasonable suspicion that criminal activity was afoot.

In order to determine whether Defendant's Fourth Amendment rights were violated, the Court must first determine at what point Defendant was seized. Then, the Court must determine whether the seizure was based on articulable facts sufficient to amount to a reasonable suspicion that Defendant was involved in criminal activity. After examining the evidence in the record and applicable case law, the Court concludes that Defendant was seized at the point that Deputy Ehrsam removed the knife from his pocket. Moreover, that seizure was not based on articulable facts sufficient to amount to a reasonable suspicion that Defendant was involved in criminal activity.

Pedestrians are protected by the Fourth Amendment's prohibition on unreasonable searches and seizures as they walk down the street. *United States v. Palmer*, 603 F.2d 1286, 1288 (8th

4

Cir. 1979). "A consensual encounter between an officer and a private citizen does not implicate the Fourth Amendment." *United States v. Quinn*, 2014 WL 2855064, *3 (W.D. Mo. June 23, 2014) (quoting *United States v. Jones*, 269 F.3d 919, 925 (8th Cir. 2001)). Approaching an individual and requesting identification does not constitute a seizure "so long as the [officer does] not convey a message that compliance with [his request] is required." *United States v. Bostick*, 501 U.S. 429, 437 (1991). "Whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Palmer*, 603 F.2d at 1288 (quotation omitted). Seizure may occur "either by physical restraint or by sufficient show of authority." *Id.* (citation omitted). Whether an individual has been seized is determined by whether, looking at all the circumstances, an individual would not feel "free to ignore the officer and proceed on his way." *Id.* (citation omitted). Factors relevant to determining whether an individual was seized for purposes of the Fourth Amendment include: whether the defendant was touched by the officer and the tone of voice or specific language used by the officer. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (listing the foregoing factors and others). While not dispositive, the taking of an individual's personal property during a stop is a strong indicator that that individual is not free to go. *United States v. Black*, 707 F.3d 531, 538 (4th Cir. 2013) (quotation omitted).

The Court concludes the first encounter between Deputy Ehrsam and Defendant was consensual and therefore does not trigger a Fourth Amendment analysis. Because Deputy Ehrsam did not attempt to stop Defendant from walking away after giving his name, when viewed in light of all the circumstances, a reasonable person would conclude they were free to terminate the encounter and walk away. *See Palmer*, 603 F2d at 1288.

The second encounter, which occurred near the intersection of 16th and Cherry Streets, was not consensual. While there is no indication in the record as to whether Deputy Ehrsam told Defendant he was not free to go, the Court finds that a reasonable person would not feel free to leave because Deputy Ehrsam persisted in attempting to contact Defendant despite Defendant's efforts to avoid contact. *See Palmer*, 603 F.2d 1286 (law enforcement's attempt to contact the defendant a second time after the defendant tried to avoid the first encounter was a sufficient show of authority to constitute a seizure). Moreover, Deputy Ehrsam's act of removing Defendant's legal knife from his pocket further enforces this conclusion because retention of an individual's personal property is a substantial indicator that Defendant was not free to leave. *See Florida v. Royer*, 460 U.S. 491 (1983) (officer's retention of the defendant's identification and ticket, without representing that the defendant was free to leave, amounted to a seizure for Fourth Amendment purposes); *see also Black*, 707 F.3d at 538. Additionally, Deputy Ehrsam's repeated request for Defendant's name, together with the demand that Defendant not to lie to him, would lead a reasonable person to believe that compliance was required and not requested. Therefore, Defendant was seized during the second encounter at the time Deputy Ehrsam removed the knife from Defendant's pocket. Assuming, *arguendo*, that Defendant was not seized at this point, Deputy Ehrsam then ran Defendant's information with dispatch which is a clear indicator that Defendant was not free to go.

Having determined at what point Defendant was seized for purposes of the Fourth Amendment, the Court must next determine whether Deputy Ehrsam's stop and seizure of Defendant was based on articulable facts sufficient to amount to reasonable suspicion that Defendant was involved in criminal activity. Seizure of an individual is a "serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment,

and it is not to be undertaken lightly." *Terry v. Ohio*, 392 U.S. 1, 17 (1968). In order to justify stopping and briefly detaining an individual, a law enforcement officer must be able to articulate facts sufficient to amount to an objectively reasonable suspicion that the individual is engaged in criminal activity. *Id.* at 21. The officer's suspicion is reasonable if he can articulate specific, "objective facts that lead to a rational inference that a crime is being or has been committed." *United States v. Jones*, 2011 WL 1831603, *2 (D. Minn. May 12, 2011) (quoting *United States v. Hernandez-Hernandez*, 327 F.3d 703, 706 (8th Cir. 2003)). The officer must cite to something more than a mere hunch or "unparticularized suspicion." *Terry*, 392 U.S. at 27. "In determining whether reasonable suspicion exists, [courts] consider the totality of the circumstances in light of the officers experience and specialized training." *United States v. Davis*, 457 F.3d 817, 822 (8th Cir. 2006) (citation omitted). Race alone is not sufficient to create reasonable suspicion. *Buffkins v. City of Omaha*, 922 F.2d 465, 470 (8th Cir. 1990). Additionally, even a defendant's refusal to cooperate, without more, is not sufficient to create reasonable suspsicion. *Bostick*, 501 U.S. at 437. A series of seemingly innocent acts, when viewed as a whole, may raise an objectively reasonable suspicion of criminal behavior. *United States v. Weaver*, 966 F.2d 391, 394 (8th Cir. 1992). Generally, a stop is justified if the individual stopped matches the suspect's description and is stopped near in time and place to the scene of a crime. *United States v. Horton*, 611 F.3d 936, 940 (8th Cir. 2010). The fact that a law enforcement officer's hunch or suspicion was ultimately correct "is not dispositive for a constitutional analysis[.]" *Quinn*, 2014 WL 2855064 at *3 (citing *INS v. Delgado*, 466 U.S. 210, 217 (1984)).

The Government has not met its burden of showing that the stop of Defendant was supported by articulable facts sufficient to amount to reasonable suspicion that Defendant was engaged in criminal activity. Rather, the record shows that Deputy Ehrsam did not articulate any facts that

7

could amount to a reasonable suspicion to justify stopping Defendant. Though Deputy Ehrsam did have some nebulous awareness of a previous alleged armed robbery or assault perpetrated by a young black or Hispanic male near the location of the second encounter with Defendant, that alleged incident occurred at least a week prior to the encounter at issue in this case. As articulated by Deputy Ehrsam, this description alone is too generic to be sufficient to provide reasonable suspicion that Defendant was the suspect in the LPD's investigation. The only facts articulated by Deputy Ehrsam to substantiate his suspicion were: that a crime had occurred at least one week prior to the encounter at issue in this case involving a black or Hispanic male and that there are few young black or Hispanic males in Lamar. (Doc. 33.). There is no indication in the record that Defendant's behavior, as observed by Deputy Ehrsam, provided any reason to cause suspicion. Further, there is no indication in the record that Defendant said anything suspicious to Deputy Ehrsam during or after the first encounter. Ultimately, there is no indication anywhere in the record to provide any reasonable suspicion that Defendant was engaged in criminal activity. *See Buffkins*, 922 F.2d at 469-70 (8th Cir. 1990) (the defendant's race, without more, could not create reasonable suspsicion of criminal activity); *United States v. Collins*, 532 F.2d 79, 82 (8th Cir. 1976) (finding that that the color of an individual's skin is an identifying factor but is insufficient by itself to create reasonable suspicion); s*ee also United States v. Gray*, 213 F.3d 998 (8th Cir. 2000) (reasonable suspicion did not exist to stop and frisk the defendant when the defendant crossed the street after noticing the police vehicle in an attempt to avoid law enforcement); *United States v. Eustaquio*, 198 F.3d 1068 (8th Cir. 1999) (reasonable suspicion did not exist when the defendant did not have any luggage, bought a one-way ticket with cash, and no one met her at the airport because that description encompasses a large number of innocent people and was therefore too generic to arouse suspicion).

The Court is not persuaded by the Government's argument that Defendant's proximity to the alleged armed robbery in conjunction with a generic description of a suspect amounts to reasonable suspicion. While the record is unclear as to the exact date of the robbery, Deputy Ehrsam testified he believed it had occurred the week prior to his contact with Defendant.[5] There are innumerable innocent reasons why Defendant could be present at that location, such as if he worked or lived in the area. Moreover, even if Deputy Ehrsam believed the incident occurred the week prior, as he testified, one week is too far removed from the original crime to be sufficient to cause reasonable suspicion that Defendant was engaged in criminal activity. *Cf. United States v. Green*, 691 F.3d 960, 963 (8th Cir. 2012) (reasonable suspicion existed to detain defendant when defendant matched the generic description of the suspect and was located by law enforcement in close proximity to a bank that had just been robbed); *United States v. Dickens*, 2016 WL 447456, *2 (D. Minn. Feb. 4, 2016) (law enforcement had reasonable, articulable suspicion to believe the defendants had participated in a crime when the defendants matched a generic physical description and were located by law enforcement minutes after the crime and only one block away). Therefore, the Court concludes that the stop and seizure of Defendant was unlawful because Deputy Ehrsam had no reasonable articulable suspicion that Defendant was engaged in criminal activity.

All the factors enumerated by the Government in the record, when viewed in their totality, fail to amount to sufficient reasonable suspicion to justify the seizure of Defendant. Therefore, Deputy Ehrsam's detention of Defendant was unlawful and violated Defendant's Fourth Amendment rights.

---

[5] Although the record is unclear, there is some indication that the robbery occurred on or about March 20, 2016.

**B. The evidence and statements obtained as a result of the unlawful stop and seizure of Defendant are not sufficiently attenuated by the discovery of a valid, pre-existing arrest warrant to purge the taint caused by the unlawful stop.**

Evidence obtained in violation of the Fourth Amendment is tainted by the unlawful conduct and must be excluded. *United States v. Simpson*, 439 F.3d 490, 493 (8th Cir. 2006). The exclusionary rule includes both "primary evidence obtained as a direct result of an illegal search or seizure [and] evidence later discovered and found to be derivative of an illegality, or fruit of the poisonous tree." *Segura v. United States*, 468 U.S. 796, 804 (1984) (internal citation and quotation marks omitted). Excluding fruits of illegal conduct serves to deter future misconduct by the police and serves the function of judicial integrity. *Terry*, 392 U.S. at 12, 29. Courts must prohibit the use of evidence obtained as a result of such misconduct in order to not be a "party to lawless invasions of constitutional rights of citizens." *Id.* at 13. By not suppressing evidence obtained as a result of a constitutional violation, the court "legitimiz[es] the conduct which produced the evidence[.]" *Id.* Thus, when official conduct infringes on an individual's constitutional rights without objective justification and "when such conduct is identified, it must be condemned by the judiciary and its fruits must be excluded[.]" *Id.* at 15.

However, evidence can be purged of taint if it is sufficiently attenuated from the unconstitutional conduct. *Hudson v. Michigan*, 547 U.S. 586, 593 (2006). If the "connection between unconstitutional police conduct and the evidence is too remote or has been interrupted by some intervening circumstance," suppressing the evidence would not serve the deterrence rationale. *Utah v. Strieff*, 136 S.Ct. 2056, 2061 (2016) (citation omitted). A valid warrant can be an intervening circumstance that breaks the causal chain between the unconstitutional behavior and the discovery of evidence. *Id.* at 2062. First, courts examine the "temporal proximity between the unconstitutional conduct and the discovery of evidence." *Id.* at 2062 (internal

quotation marks omitted). In order for time to sufficiently purge evidence of the taint of unlawful police conduct, a "substantial time" must elapse. *Id.* (citation omitted). Second, courts contemplate the existence of intervening circumstances. *Id.* (citation and quotation marks omitted). The discovery of a valid warrant after an unlawful stop "favors finding that the connection between unlawful conduct and the discovery of evidence is sufficiently attenuated to dissipate the taint." *Id.* (citation and quotation marks omitted). Third, courts examine "the purpose and flagrancy of official misconduct." *Id.* at 2063 (citation and quotation marks omitted). "The purpose and flagrancy of the official misconduct is considered the most important factor because it is directly tied to the purpose of the exclusionary rule—deterring police misconduct." *Simpson*, 493 F.3d at 496 (citation omitted).

The first factor set out by the Supreme Court in *Strieff*, temporal proximity between the discovery of the evidence and the unlawful conduct, weighs in favor of suppression. The record shows that Deputy Ehrsam ran Defendant's information for warrants at approximately 5:30 PM on April 9, 2016. (Gov't Ex. 2.) The Comanche County, Oklahoma Sheriff's Department was notified of Defendant's detention at approximately 5:45 PM. (*Id.*) At some time between the seizure of Defendant and his detention, his bag was searched. The Supreme Court has previously held that less than two hours between the unlawful conduct and discovery of evidence is not a sufficient amount of time to dissipate the taint of the unlawful conduct. *See Brown v. Illinois*, 422 U.S. 590, 604-05 (1975). In this case, while the record is unclear as to the exact timing of events, it is likely the entire encounter from the stop to the search of Defendant's bag took less than two hours. Therefore, the amount of time that elapsed between the unlawful stop and the discovery of the firearm in Defendant's possession is not sufficient to purge the evidence of the taint of the unlawful stop.

11

The second factor, the presence of intervening circumstances, favors the Government. In this case, as in *Strieff*, valid arrest warrants, issued prior to Deputy Ehrsam's contact with Defendant but discovered after the unlawful stop, are intervening circumstances. 136 U.S. at 2062. Once Deputy Ehrsam discovered a valid, active warrant for Defendant's arrest, he was obligated to arrest him. *See Segura*, 468 U.S. at 815 (suggesting that the existence of a valid warrant is a significant intervening circumstance which may attenuate the discovery of evidence from unlawful conduct).

The third factor, the flagrancy of the misconduct, weighs heavily in favor of suppression. In *Strieff*, the officer's conduct "was at most negligent." 136 U.S. at 2063. However, in the case at bar, Deputy Ehrsam could not, despite an attempt by the Court to elicit such information, articulate any fact that could have reasonably aroused his suspicion. The record provides no indication that Defendant, while walking down the street, took any action, or made any statements, that might arouse a reasonable suspicion that he was engaged in criminal activity. The only facts Deputy Ehrsam cites for his suspicion are the color of Defendant's skin and a nebulous awareness of a robbery that had occurred one week to twenty days prior to April 9, 2016.[6] These facts, even taken together, are not sufficient to amount to an objectively reasonable suspicion in light of the totality of the circumstances.[7] As discussed above, while a succession of innocent acts can, when taken together, create a reasonable suspicion that criminal activity is afoot; the color of an individual's skin is far too generic a description to create reasonable suspicion. Moreover, the Government's assertion that Deputy Ehrsam acted in good faith is unfounded. Even if, *arguendo*, Deputy Ehrsam saw nothing wrong with stopping Defendant based on his race, assertions of good faith are not enough. *See Terry*, 392 U.S. at 21 (if

---

[6] The briefs of both parties stipulate that the robbery occurred on March 20, 2015. (Docs. 20, 26.)
[7] Furthermore, Deputy Ehrsam's conduct in stopping and seizing Defendant, with nothing more suspicious than the color of Defendant's skin, amounts to racial profiling.

12

subjective good faith alone was enough, Fourth Amendment protections would exist only at the discretion of the police).

After weighing all the factors as set forth in *Strieff,* the balance weighs in favor of suppression. While the valid warrants for Defendant's arrest give rise to a substantial intervening circumstance, they are not sufficient to offset the other two factors; the close proximity between the unlawful conduct and the discovery of the firearm and the flagrant abuse of police discretion. As such, Deputy Ehrsam's seizure of Defendant violated Defendant's Fourth Amendment rights and any evidence or statements derived therefrom, specifically, all statements made by Defendant after Deputy Ehrsam removed the knife from Defendant's pocket and all evidence obtained as a result of the search of Defendant and his backpack, including the firearm and white glass pipe found in Defendant's backpack, must be suppressed.

### III. Recommendation

Based on the foregoing discussion, it is hereby **RECOMMENDED** that Defendant's Motion to Suppress Evidence, (Doc. 20), be **GRANTED**. As noted, the seizure of Defendant, as well as any evidence or statements derived as a result of that seizure should be **SUPPRESSED**.

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: July 25, 2017